# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-1476V
(Not to be published)

* * * * * * * * * * * * * * * * * * * * * * * *
KAREN GOLDIE,

                Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

                Respondent.

* * * * * * * * * * * * * * * * * * * * * * * *

Chief Special Master Corcoran

Filed: December 6, 2019

Attorney's Fees and Costs;
Reasonable Basis; Guillain Barré
Syndrome; Chronic Inflammatory
Demyelinating Polyneuropathy.

*James M. Kelly*, Robbins, Kelly, Patterson & Tucker, LPA, Cincinnati, OH, for Petitioner.

*Robert Paul Coleman, III*, U.S. Dep't of Justice, Washington, D.C., for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On September 26, 2018, Karen Goldie filed a Petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that she developed Guillain-Barré syndrome ("GBS") and Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP") after receiving the influenza ("flu") vaccine on October 16, 2015. Pet. at 1 (ECF No. 1). Unable to maintain expert support for her claim, Ms. Goldie filed a Motion

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

seeking dismissal of the Petition the following year, on October 7, 2019, and I subsequently dismissed the action. Decision, dated October 11, 2019 (ECF No. 19).

On November 5, 2019, Petitioner filed a motion seeking a final award of attorney's fees and costs. Mot. for Final Att'ys' Fees and Costs (ECF No. 20) ("Mot."). Ms. Goldie requested $38,613.75[3] in attorney's fees. Mot. at 3. As the invoice attached to the Fees Motion demonstrates, Mr. James M. Kelly, Esq. worked on the matter between late-March 2018 and the present date, along with one legal assistant.[4] Ex. 1 to Mot. Petitioner also requests costs in the total sum of $5,635.86, reflecting filing fees and the work of a single expert who consulted on the matter. Mot. at 4; Ex. 3 to Mot.; Ex. 4 to Mot.

Respondent reacted to the fees request on November 19, 2019. *See* Response, dated Nov. 19, 2019 (ECF No. 23). He indicates in his Response that he is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case but defers to my discretion the calculation of a proper amount to be awarded. *Id.* at 2–3.

Now, having had the opportunity to review all filings in light of the medical record, I hereby (and for the reasons set forth below) GRANT IN PART AND DENY IN PART Petitioner's motion.

I.     **Brief Factual Summary**

Petitioner received the flu vaccine on October 16, 2015. Pet. at 1. Several months later, on January 6, 2016, Petitioner presented to the emergency department of Miami Valley Hospital and complained of upper body weakness that had persisted since its onset on December 18, 2015. Ex. 3 at 5–6, 12. A physical examination revealed equal, but diminished strength in both upper extremities as well as mild weakness in her lower extremities. *Id.* at 14, 16. Despite these findings, Petitioner's overall appearance was good, and she was discharged home with instructions to follow-up with neurology and her primary care physician. *Id.* at 16. She was also told to return to the emergency department if her symptoms worsened. *Id.*

Petitioner returned to the emergency department at Miami Valley Hospital on January 9, 2016 and complained of worsening weakness. *Id.* at 43. Her lower extremity weakness was so severe that she was unable to ambulate and required mobility assistance. *Id.* at 53. She was admitted for "further monitoring, evaluation, and continued diagnostic testing for her generalized weakness and inability to ambulate." *Id.* at 43–44.

---

[3] Petitioner's motion reflects a pre-filing reduction of actual fees incurred at a rate of twelve and a half percent to account for duplicative work that was conducted by Mr. Kelly and his paralegal inadvertently. Mot. at 3.

[4] Petitioner did not file a General Order No. 9 Statement in connection with her fee application (and counsel does not request any costs personally incurred by Petitioner).

An EMG and nerve conduction study performed on January 13, 2016 showed evidence of a peripheral polyneuropathy. *Id.* at 75. That same day, Ms. Goldie underwent a lumbar puncture. *Id.* at 76. The results of the lumbar puncture showed elevated protein levels. *Id.* at 123. Acute inflammatory demyelinating polyneuropathy ("AIDP")—a common GBS variant—became the most favored etiology for Ms. Goldie's condition. *Id.* at 76, 80. Additionally, her treating physicians noted that she "did report recent vaccinations in [September]. This could be an atypical presentation." *Id.* at 80. Ms. Goldie was treated with a five-day course of IVIG with marked improvements in her condition. *Id.* at 89, 102. She was discharged home on January 18, 2016. *Id.* at 162.

In the months that followed, Ms. Goldie experienced several relapses in her GBS-like symptoms requiring hospitalization and continued treatment with IVIG. *See id.* at 599, 946. Given the persistent relapsing and remitting nature of her symptoms, Ms. Goldie was diagnosed with CIDP. *Id.* at 946; *see also* Ex. 6 at 40, filed Sept. 26, 2018 (ECF No. 5-6). Following her diagnosis, Ms. Goldie continued to experience several more relapses that required hospitalization and IVIG treatment. Ex. 3 at 1143, 2389, 2654. In an effort to further limit the number of relapses she was experiencing, Ms. Goldie began plasma exchange treatments in April 2017. *Id.* at 3293. Despite experiencing significant improvements with weekly plasma exchange, Ms. Goldie still experienced relapses requiring hospitalization in September and October 2017, as well as January 2018. *Id.* at 4057–58, 4901–02, 5757–58; Ex. 7 at 16, filed Sept. 26, 2018 (ECF No. 5-7).

Following her January 2018 hospital admission, Ms. Goldie experienced improvement in her condition. *See* Affidavit of Karen Goldie at 6, filed as Ex. 2 on Sept. 26, 2018 (ECF No. 5-2). She regained mobility and the ability to perform most activities of daily living without difficulty. *Id.* On March 15, 2018, she had a follow-up appointment as well as a colonoscopy. Ex. 3 at 6386. The colonoscopy revealed a neuroendocrine carcinoid tumor, which was subsequently removed. *Id.*

## II.     Analysis

### A. *Petitioner's Claim had Reasonable Basis*

Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. Rather, such a claim must be shown to have possessed "reasonable basis"—meaning that it had some objective basis upon which to proceed, in light of the "totality of the circumstances." *See, e.g.*, *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015).

3

Here, I find Petitioner's claim had sufficient objective basis to entitle her to a fee award under the applicable reasonable basis analysis. Claims that vaccines can cause GBS and CIDP are common enough in the Program to have facial credibility. Even though this claim was unsuccessful (due primarily to the lack of expert support for Petitioner's proposed theory of causation following the discovery of her neuroendocrine carcinoid tumor), it was based on evidence, including diagnostic test results and treater support, of GBS and CIDP following vaccine administration. In addition, the claim's objective deficiencies were only revealed after an expert pointed them out. Mot. at 2. There was enough evidence in the record to support bringing the claim, and Respondent for his part does not otherwise contest reasonable basis.

B.  *The Requested Hourly Rates are Reasonable*

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Mr. Kelly is a named partner of Robbins, Kelly, Patterson & Tucker, LPA, located in Cincinnati, Ohio, a jurisdiction that has been deemed "in forum." *See Mollica on behalf of A.M. v. Sec'y of Health & Human Servs.*, No. 15-1520V, 2017 WL 2807954, at *2 (Fed. Cl. Spec. Mstr. May 23, 2017). He is therefore entitled to the forum rates established in *McCulloch* and subsequently embraced by the Office of Special Masters.[5] Upon consideration, given the information proffered by Petitioner herein about Mr. Kelly along with his overall experience, the

---

[5]  *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2018–2019, https://www.uscfc.uscourts.gov/node/2914 (last accessed on Dec. 5, 2019).

quality of his work, and his reputation in the legal community, I find that the rates requested are reasonable for the work completed herein.

### C. *Some of the Hours Expended are Unreasonable*

While I find the *rates* requested in this case to be reasonable, I find certain of the *hours* expended in this matter *unreasonable*. In assessing the number of hours eligible for reimbursement, the courts must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Likewise, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 433–44 (emphasis in original); *see also Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627V, 2008 WL 4426040, at *28 (Fed. Spec. Mstr. Sept. 23, 2008) *aff'd in part & rev'd in part* (on other grounds), *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201 (2009). Should a special master find the hours expended are unreasonable, the special master may reduce a fees request *sua sponte*, regardless of whether respondent filed an objection to a particular request. *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *7 (Fed. Cl. Spec. Mstr. June 15, 2011), *mot. for rev. denied*, 106 Fed. Cl. 600 (withdrawn), *aff'd*, 406 Fed App'x 479 (Fed. Cir. 2011). In making such a reduction, the special master is not required to afford the petitioner the opportunity to explain the unreasonable request because such justification should have been provided in the initial request. *Sebella*, 86 Fed. Cl. at 208–09.

But what tasks constitute "excessive, redundant, or otherwise unnecessary" hours expended? The instant matter provides two examples: performing medical research and performing general research regarding the Vaccine Program.

Prior to filing a claim in the Vaccine Program, attorneys are encouraged to perform independent research on filing procedures to ensure an efficient and complete review of the claim. They are also encouraged to research the merits of the case before them. But this kind of generalized background work is not compensable. *See Curran v. Sec'y of Health & Human Servs.*, No. 15-804, 2017 WL 1718791, at *4 (Fed. Cl. Spec. Mstr. Marc. 24, 2017) ("[i]n any Vaccine Program claim, counsel are expected to perform some due diligence before filing, which may require an expenditure of time reviewing materials connected to the claim before it is filed. *That time is not reimbursed via the Program, but is instead properly viewed as borne by the attorney as business cost*." (emphasis added)).

General research conducted for the purpose of familiarizing oneself with medical terminology, filing procedures, and case law are not recoverable tasks under the Vaccine Act. *See Helton v. Sec'y of Health & human Servs.*, No. 16-0234V, 2017 WL 4020452, at *5 (Fed. Cl. Spec. Mstr. Aug. 28, 2017) (holding that "'it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program'" (citing *Matthews v. Sec'y of Health & Human Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016));

*Carter v. Sec'y of Health & Human Servs.*, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2017) (finding that "[a]n inexperienced attorney may not ethically bill his client to learn about an area of law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task."); *see also Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *26 (Fed. Cl. Spec. Mstr. July 25, 2011) (finding that "the primary medical research is performed appropriately by the experts, not counsel."); *Hammitt v. Sec'y of Health & Human Servs.*, No. 07-170V, 2011 WL 1827221, at *5 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (noting that "[a]though an attorney must review and understand medical literature to prosecute a case, most attorneys are not qualified to conduct the research on medical issues").

Mr. Kelly reported a total of 10.2 hours of research related to "GBS and CIDP medical conditions," "GBS, CIDP symptomology and treatment," vaccine court rules," "case research on vaccine docket, CIDP cases, decisions and settlements," and "article on paraneoplastic syndromes secondary to neuroendocrine tumors." Ex. 1 to Mot. Similarly, Mr. Kelly's paralegal reported a total of 7.6 hours of research related to "GBS and AIDP," "medical procedure," "CIDP cases and awards," "GBS and CIDP cases filed with vaccine court," "CIDP cases heard before special master[] Corcoran," "paraneoplastic syndrome," "carcinoid and paraneoplastic neuropathies," and "Loving elements of proof of aggravation of injury." *Id.* Though counsel no doubt needed to familiarize himself with Program requirements and the facts of this case, the nearly eighteen hours spent researching general information about the alleged injury and associated treatments, Vaccine Program rules, prior fee decisions, and prior entitlement decisions alleging GBS and CIDP far exceed the scope of compensable research contemplated by the Vaccine Act. *See Helton*, 2017 WL 4020452, at *5; *Hammitt*, 2011 WL 1827221, at *5. Accordingly, I will reduce Petitioner's award of fees for almost eighteen hours spent conducting medical and general Program research by seventy-five percent—equaling a reduction of $4,077.75.[6]

D. *The Requested Costs are Reasonable*

I will next turn to costs. Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992); *Presault v. United States*, 52 Fed. Cl. 667, 670 (Fed. Cl. 2002). When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

---

[6] Multiplying Mr. Kelly's 10.2 hours expended by 0.75 (the percentage by which I deemed it necessary to reduce the requested fees award), and subsequently multiplying by Mr. Kelly's hourly rate of $425 results in a reduction of $3,251.25. Multiplying the 7.6 hours expended by Mr. Kelly's paralegal by the reduction rate of 0.75 and multiplying the product by the requested paralegal rate of $145 results in a reduction of $826.50. In sum, the aforementioned reductions equal $4,077.75.

Petitioner requests $5,635.86 in overall costs. Mot. at 4; Ex. 3 to Mot.; Ex. 4 to Mot. This amount includes the cost of postage, expert consultation fees, and medical record requests. Mot. at 3–4; Ex. 3 to Mot.; Ex. 4 to Mot. These costs are typical of Vaccine Program litigation, and Petitioner has provided adequate documentation supporting them. Additionally, the medical expert retained in this matter provided services that assisted in the resolution of this case. Therefore, I find reimbursement of the requested expert costs reasonable. I thus find the requested costs to be reasonable and shall award them without reduction.

## CONCLUSION

I hereby GRANT IN PART Petitioner's motion for attorney's fees and costs. An award of **$40,171.86** (representing $34,536.00 in attorney's fees, plus $5,635.86 in costs) shall be made in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. James Kelly, Esq.

|  | **Requested Amount** | **Amount Awarded** | **Difference** |
|---|---|---|---|
| **James Kelly, Esq.** | $22,944.69 | $19,693.44 | $3,251.25 |
| **Paralegal** | $15,669.06 | $14,842.56 | $826.50 |
| **Costs** | $5,635.86 | $5,635.86 | $0.00 |
| **Total** | $44,249.61 | **$40,171.86** | $4,077.75 |

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this decision.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
